# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ANTONIO HARRINGTON,<br><br>  Plaintiff,<br><br>vs.<br><br>KELLY HOLDER,<br><br>  Defendant. | No. C12-4057-MWB<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

_____

Defendant's motion for summary judgment (Doc. No. 10) has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. Plaintiff has filed a resistance (Doc. No. 14) and defendant has filed a reply (Doc. No. 15). Neither party requested oral argument and, in any event, oral argument is not necessary. *See* Local Rule 7(c). The motion is fully submitted.

## *PROCEDURAL HISTORY*

Plaintiff Antonio Harrington filed a *pro se* complaint (Doc. No. 3) pursuant to 42 U.S.C. § 1983 on August 13, 2012. He alleges that defendant Kelly Holder violated his constitutional rights while he was an inmate at the Fort Dodge Correctional Facility. Doc. No. 3 at 3-4. Specifically, he contends that he submitted a written complaint to Holder about two fellow inmates and that Holder allowed the complaint to be disclosed to or viewed by other inmates, ultimately resulting in a retaliatory assault on Harrington that caused pain, suffering and bodily injuries. *Id.* at 4. After initial review, Judge Bennett granted Harrington's motion to proceed *in forma pauperis* and directed the appointment of counsel for him. *See* Doc. No. 2.

Holder filed an answer (Doc. No. 6) on September 7, 2012, in which she denied liability and raised affirmative defenses, including the defense of qualified immunity. She then moved for summary judgment on February 4, 2013. Neither party has filed a jury demand.

## *RELEVANT FACTS*

Based on the parties' submissions, the following facts are undisputed:

At all relevant times, Harrington was an inmate at the Fort Dodge Correctional Facility (FDCF) while Holder was a prison official at FDCF with the rank of Captain. On February 8, 2012, Harrington wrote an inmate memo (referred to as a "kite") to Holder in which he complained about the actions of two fellow inmates regarding television rentals. Those inmates were Randall Brown and T. Redd.

Holder testified that she does not recall this specific kite, but that she typically refers issues regarding television rentals to another FDCF employee, Janet Renshaw. Renshaw is the prison official in charge of the rental program. Holder testified that she would have either handed the kite to Renshaw or placed it in Renshaw's mailbox, which is not accessible to inmates. She further testified that she would not (a) leave a kite "on a desk that inmates would be able to see" or (b) disclose information about Harrington's memo to other inmates. Def. Appx. (Doc. No. 10-3) at 6-7.

Harrington, in a supporting affidavit, states that Holder gave his kite to the activity director at FDCF. He then states that Brown and Redd, the inmates mentioned in the kite, "saw the kite." Doc. No. 14-3 at 1. Harrington does not explain how he knows that Brown and Redd saw the kite. However, he states that "it was common knowledge in the prison yard" that he sent the kite and that "other inmates informed me that they had knowledge of the kite." *Id.* at 1-2.

2

At some point after sending the kite, Harrington was transferred to a segregated unit for unrelated disciplinary reasons. On March 16, 2012, soon after being released from the segregated unit, he was assaulted by another inmate, Adonis Willis. In his complaint (but not in his affidavit) Harrington alleges that Brown and Redd arranged for Willis to conduct the assault in retaliation for Harrington's kite. Holder testified that she had no advance knowledge that Harrington was in danger and that she would not have released him from the segregated unit if she had such information. She also testified that if Harrington believed he was in danger, he could have requested placement in protective custody.

In his affidavit, Harrington states that he was taken to Holder's office immediately after the assault. He also states that the first question Holder asked him was whether the assault had anything to do with the February 8 kite.

## *SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

3

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (*quoting Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id*. at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*.

The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (*citing Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

4

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## *ANALYSIS*

Holder advances two arguments in support of her motion for summary judgment:

1. As a matter of law, Harrington has failed to establish that Holder violated his constitutional rights.

2. Even if Harrington could establish such a violation, Holder is entitled to qualified immunity.

I will address each argument separately.

### A. *Violation of Harrington's Constitutional Rights*

The Eighth Amendment guarantees prisoners the right to be free from cruel and unusual punishment. Among other things, this requires prison officials to "take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Young v. Selk,* 508 F.3d 868, 871-72 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Nelson v. Shuffman,* 603 F.3d 439, 446 (8th Cir. 2010). A prison official acts unreasonably, and thereby violates the Eighth Amendment, if he or she is "deliberately indifferent to a 'substantial risk of serious

5

harm.'" *Young*, 508 F.3d at 872 (quoting *Farmer*, 511 U.S. at 828). To prove deliberate indifference, an inmate must make both an objective and subjective showing. Objectively, the inmate must show that the deprivation of rights was sufficiently serious. A deprivation is sufficiently serious if the official's failure to protect resulted in the inmate being "incarcerated under conditions posing a substantial risk of serious harm." *Young*, 508 F.3d at 872 (quoting *Farmer*, 511 U.S. at 834).

Subjectively, the inmate must show that the prison official had a "sufficiently culpable state of mind." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). A prison official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it. *Id.* at 873 (citing *Farmer*, 511 U.S. at 844-45). The official must not only have been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, but also must have actually drawn that inference. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (quoting *Farmer*, 511 U.S. at 837). Proof of this subjective state of mind is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (internal citations omitted). The question of whether the official knew of the substantial risk is a factual one "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

An inmate need not show "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Nor is the inmate required to allege and prove that the official "specifically knew about or anticipated the precise source of the harm." *Kahle v. Leonard*, 477 F.3d 544, 551 (8th Cir. 2007) (quoting *Krein v. Norris*, 309 F.3d 487, 491 (8th Cir. 2002)). At the same time, however, "neither unsupported conjecture nor negligence regarding a

6

substantial risk of serious harm to the inmates is sufficient to prove deliberate indifference." *Lenz*, 490 F.3d at 996 (citing *Farmer*, 511 U.S. at 835).

In her argument, Holder does not focus on the objective element of Harrington's claim. As such, for purposes of her motion I will assume the evidence permits a finding that the alleged deprivation of Harrington's rights was "sufficiently serious." Holder does, however, contend there is no evidence supporting the subjective element, which requires Harrington to show that she actually knew of a substantial risk to Harrington and failed to respond reasonably to it. Based on the record before me, I agree with Holder that Harrington has failed to generate a genuine issue of material fact on this issue.

First, Harrington has produced no evidence that his assault on March 16, 2012, was causally linked to the kite that he sent to Holder more than a month earlier. In his complaint, he alleges that "a hit was put out on me," presumably because of the kite. Doc. No. 3 at 4. However, his supporting affidavit contains no such assertion, nor does it contain any facts that would allow a finding that the assailant, Willis, assaulted Harrington because of a kite that contained no complaints about Willis. There is no basis, apart from pure speculation, to determine Willis's motive for attacking Harrington. Thus, while Harrington may *believe* the assault occurred because of the kite, he has produced no evidence to support that belief. And, of course, if Harrington cannot show the kite created a substantial risk that led to the assault, he has no basis for claiming that Holder violated his constitutional rights.

Second, even if Harrington could show that the assault occurred because of the kite, he has failed to produce evidence that Holder had a "sufficiently culpable state of mind" as required to prove an Eighth Amendment violation. As noted above, Harrington must prove that Holder "acted or failed to act despite [her] knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Holder testified that she had no prior knowledge of any danger to Harrington and that she would not have allowed

7

him to be removed from the segregated unit if she had been aware of any such danger. Harrington disputes this testimony by stating in his affidavit that Holder asked him, after the attack, if the assault had anything to do with the kite. Accepting this as true, the fact that Holder asked this question after the attack does not contradict her testimony that she had no *prior* knowledge of any danger to Harrington. After the attack, Holder knew that Harrington had previously complained about two inmates and that he had later been assaulted. Her question to Harrington as to whether the events might be related does not prove pre-existing knowledge of a substantial risk of serious harm.[1]

It is undisputed that Holder, after receiving the kite, referred it to another staff member for handling. *Compare* Doc. No. 10-1 at ¶¶ 3-4 and Doc. No. 14-3 at 1 ("Captain Holder then gave the kite to the activity director. She did not deal with the situation herself."). There is no evidence that Holder either caused or became aware of any disclosure of the kite to other inmates. Harrington's contention that other inmates knew about the kite, and that the kite was "common knowledge in the prison yard," does not establish that *Holder* had such knowledge. Indeed, Harrington has produced no evidence that any employee of FDCF knew that any other inmates had somehow learned of Harrington's kite against Brown and Redd.

It is telling that Harrington does not claim *he* believed himself to be in danger prior to the attack. Harrington admits in his affidavit that he knew Brown and Redd "saw the kite" and, in fact, that the kite had become "common knowledge." Yet he does not state that he was concerned for his own safety. Nor does he state that he did anything to alert anyone at FDCF that he might be at risk.[2] If Harrington is unable to

---

[1] By contrast, if Holder would have made a statement to the effect that she had been concerned for Harrington's safety, or that she should have taken steps to protect him because of the kite, those admissions would show pre-existing knowledge. An after-the-fact question about possible causation, however, does not.

[2] In his response to Holder's statement of undisputed facts, Harrington states "there is no showing

8

testify that he was aware of danger due to the alleged disclosure of the kite, it is difficult to imagine how Holder could have reached such a conclusion.

As I noted earlier, "neither unsupported conjecture nor negligence regarding a substantial risk of serious harm to the inmates is sufficient to prove deliberate indifference." *Lenz*, 490 F.3d at 996 (citing *Farmer*, 511 U.S. at 835). To prove that Holder violated his Eighth Amendment rights, Harrington must show that she knew of the facts that gave rise to the risk and actually drew the inference that those facts placed him at risk, but still failed to take action to protect him. The summary judgment record contains no evidence that would allow such a finding. As such, Harrington's claim fails as a matter of law.

### B.  *Qualified Immunity*

Holder argues, in the alternative, that even if Harrington could raise genuine issues of material fact as to whether she violated his Eighth Amendment rights, she is still entitled to summary judgment under the doctrine of qualified immunity. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances (a) the need to hold public officials accountable when they exercise power irresponsibly with (b) the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. *Pearson v.*

---

that [Harrington] knew he had the option to request protective custody if he felt in danger." Doc. No. 14-2 at ¶ 9. This is not a meaningful response. The only person who can attest to Harrington's actual knowledge is Harrington. If he could actually state, under oath, that he did not know he could request protection, he should have included that statement in his affidavit. He did not. *See* Doc. No. 14-3.

*Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).

The qualified immunity analysis consists of two inquiries:

1. Do the facts alleged or shown make out a violation of a constitutional right?

2. Was that right clearly established (from the perspective of a reasonable official in the defendant's position) at the time of the alleged conduct?

*Pearson,* 555 U.S. at 232; *see also Irving,* 519 F.3d at 446. While federal courts were once required to address these two inquiries sequentially, they are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236. Thus, when appropriate, a court may skip the first inquiry and find that qualified immunity exists based on a finding that the alleged constitutional right was not "clearly established" at the time of the alleged conduct. *Id*.

In large part, analysis of the qualified immunity defense in this case overlaps my prior analysis of the merits of Harrington's Eighth Amendment claim. Because I have already determined that Holder did not act with deliberate indifference, Harrington cannot show that she violated his clearly-established right to be protected from assault. In his resistance, however, Harrington also contends that Holder violated a clearly-established right "of not having kites circulated in the general prison population." Doc. No. 14-1 at 5. He cites *Norman v. Schueltzle*, 585 F.3d 1097 (8th Cir. 2009), as the case that clearly established this right. This overstates *Norman*.

In that case, the Eighth Circuit reversed an order denying qualified immunity to various prison officials. The plaintiff claimed one of those officials had shown the plaintiff's kites to other inmates. *Id*. at 1100-01, 1111. While those kites complained about the prison official himself, not other inmates, plaintiff contended that the official

showed them to other inmates in order to incite the assault. *Id.* at 1101. The Eighth Circuit found held that all of the defendants, including the official who disclosed the kites, were protected by qualified immunity. *Id.* at 1111. The court rejected the argument that disclosing the kites was akin to labeling the plaintiff a "snitch." *Id.* at 1110-11. The court further held that showing the kites to other inmates did not violate a clearly established constitutional right. *Id.* at 1111. Harrington cites no other authority supporting his argument that there is a clearly established right "of not having kites circulated in the general prison population."

Even assuming such a right exists, Harrington has not produced evidence that Holder violated that right. There is no evidence that Holder caused or intended Harrington's kite to be disclosed to any inmates. Indeed, and as noted earlier, Harrington admits Holder "gave the kite to the activity director" and "did not deal with the situation herself." Doc. No. 14-3 at 1. If disclosure somehow occurred, and such disclosure violated Harrington's constitutional rights, he has failed to prove that Holder is the official who committed the violation. As such, and as a matter of law, she is entitled to qualified immunity.

## *CONCLUSION*

Prison officials "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted). At the very most – and even this is a reach given the state of the record – Holder made a "bad guess" or a "mistaken judgment" by failing to provide protection to Harrington after receiving his kite. As discussed above, there is no evidence that she was deliberately indifferent to a substantial

11

risk of serious harm to Harrington. While it is unfortunate that Harrington suffered an assault, his lawsuit against Holder is misplaced. She did not violate his Eighth Amendment rights and, in any event, she is protected by qualified immunity. As a matter of law, Harrington's claim against Holder fails. As such, I RESPECTFULLY RECOMMEND that Holder's motion for summary judgment (Doc. No. 10) be **granted** and that judgment be entered in Holder's favor.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 12th day of April, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA